# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-20838-CR-CMA

**UNITED STATES OF AMERICA**

vs.
**GITANO PIERRE BRYANT, JR.,**
        **a/k/a "Tony Bryant,"**

        **Defendant.**
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Gitano Pierre Bryant, Jr., (hereinafter referred to as the "defendant") enter into the following agreement:

1.   The defendant agrees to plead guilty to count 1 of the indictment, which count charges that from on or about August 8, 2012, through on or about October 19, 2016, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, and attempting to do so, did knowingly cause to be delivered certain mail matter by the United States Postal Service, according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

2.   This Office agrees to seek dismissal of counts 2 through 33 of the indictment, as to this defendant, after sentencing.

3.   The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines").   The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.   The defendant is also aware that, under certain circumstances, the Court may depart from the advisory Sentencing Guidelines range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.   The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range.   Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4.   The defendant also understands and acknowledges that, as to count 1, the Court may impose a statutory maximum term of imprisonment of up to twenty years, followed by a term of supervised release of up to three years.   In addition to a term of imprisonment and supervised release, the Court may impose as a maximum fine of $250,000.   The defendant acknowledges that restitution must also be imposed.

5.   The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant.   The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.   If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6.   This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.   This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.   If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   This Office further agrees to

3

recommend that the defendant be sentenced at the low-end the advisory guideline range, as that range is determined by the Court.   This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; or (2) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8.   The defendant agrees that he shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he will not commit any further crimes.

9.   This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make

4

a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

10.   The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by this Office. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

11.   The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court.   The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw the defendant's plea based upon the Court's decision not to accept a

sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

12.   This Office and the defendant stipulate to and agree not to contest the following facts, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the defendant's plea of guilty in this case:

## FACTUAL BASIS

### EXCISE TAX ON TOBACCO PRODUCTS

a.   The Alcohol and Tobacco Tax and Trade Bureau ("TTB") administers and enforces laws and TTB regulations pertaining to, among other things, tobacco products imported into the United States from a foreign country.

b.   The definition of tobacco products includes, among other things, "large cigars" – cigars weighing more than three pounds per one thousand cigars. 26 U.S.C. § 5701(a)(2).

c.   Federal Tobacco Excise Tax on imported large cigars is calculated at the time the cigars are removed from the custody of U.S. Customs and Border Protection ("CBP") and enter domestic commerce. 26 U.S.C. § 5703(a)(2).

d.   Federal Tobacco Excise Tax on imported large cigars must be paid by the importer. 26 U.S.C. § 5703(a)(1). The importer must pay Federal Tobacco Excise Tax directly to CBP at the time the large cigars are released from CBP's custody.

e.   Federal Tobacco Excise Tax on imported large cigars is based on a statutorily mandated percentage of the price for which the cigars are to be sold by the importer (the "first sale price"). At the time of the events alleged in the indictment, the Federal Tobacco Excise

Tax rate for large cigars was 52.75 percent of the first sale price, but not more than 40.26 cents per cigar. 26 U.S.C. § 5701(a)(2).

       f.     Proper and truthful recordkeeping and documentation as mandated by federal law and regulations is essential to enable TTB to collect Federal Tobacco Excise Taxes properly due and owing. False recordkeeping impedes the performance of TTB's function and unduly hinders the effective administration of justice.

<u>HAVANA 59' CIGAR COMPANY</u>

       g.     Havana 59' Cigar Company ("HAVANA 59") was a Florida corporation incorporated on or about June 10, 2005.

       h.     The defendant was President of HAVANA 59.

       i.     In or around September 2008, TTB issued a Tobacco Importer Permit to HAVANA 59; the defendant owned 100 percent of the shares of HAVANA 59.

       j.     Beginning on or about August 8, 2012, and continuing until on or about October 19, 2016, the defendant imported, and caused to be imported, numerous shipments of large cigars manufactured in the Dominican Republic.

       k.     As the importer, the defendant and HAVANA 59 were responsible for paying Federal Tobacco Excise Tax properly due and owing on the imported large cigars.

       l.     To facilitate the importation of large cigars, the defendant and HAVANA 59 contracted with a licensed customs broker to oversee the entry into the United States of large cigars imported by HAVANA 59.

       m.     The licensed customs broker calculated and paid Federal Tobacco Excise Tax due and owing on imported large cigars based on information supplied by the defendant.

n.  The information the defendant provided to the licensed customs broker for the purpose of calculating and paying Federal Tobacco Excise Tax included purported foreign manufacturers' invoices, which were altered by the defendant.

o.  Specifically, the defendant altered the foreign manufacturers' invoices by lowering the price he paid for foreign cigars and misrepresenting the price he charged to his domestic customers — the first sale price — knowing that these prices would be provided to CBP and used to calculate the Federal Tobacco Excise Tax due and owing on imported large cigars.

p.  As a result, the defendant consistently evaded the Federal Tobacco Excise Tax properly due and owing on large cigars that the defendant and HAVANA 59 imported and caused to be imported into the United States.

<u>TTB AUDIT OF HAVANA 59</u>

q.  In February 2015, TTB began a civil audit of HAVANA 59.

r.  On or about April 30, 2015, in response to TTB agents' requests, the defendant, through a representative, mailed to TTB documentation purportedly evidencing HAVANA 59's purchase of large cigars from foreign manufacturers. The documents were mailed via U.S. Postal Service.

s.  Included among the documents provided to TTB by the defendant were approximately three-hundred and thirty (330) altered supplier invoices, which documents contained falsely and fraudulently lowered sales prices.

13.  The defendant agrees to forfeit to the United States, voluntarily and immediately, all property, real or personal, which constitutes or is derived from proceeds traceable to count 1 of the indictment.  ~~Such property includes, but is not limited to, the retail items listed in paragraph 11(j)~~ 

and in the forfeiture allegations of the indictment.⁸ The defendant agrees to consent to the entry of orders of forfeiture for such property and a forfeiture money judgment equal in sum to the proceeds traceable to count 1.   The defendant admits and agrees that the conduct described in the indictment and paragraph 11 provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.   The defendant agrees that the United States shall, at its option, be entitled to forfeiture of any property (substitute assets) of the defendant to satisfy the money judgment.   The defendant also agrees to assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others to the defendant's knowledge have accumulated as a result of illegal activities.   Additionally, the defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

14.   The defendant knowingly and voluntarily agrees to waive any claim or defense the defendant may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the forfeited property and money judgment.   The defendant agrees to waive the right to a jury trial on the forfeiture. The defendant agrees to waive any appeal for the forfeiture and the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant further

agrees to waive any applicable time limits for the initiation of administrative forfeiture and/or any further notification of any judicial or administrative forfeiture proceedings brought against property subject to forfeiture based on the allegations in the indictment.

15.   The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case.   Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.   The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.   However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights.   By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

16.    This is the entire agreement and understanding between this Office and the defendant. Other than a limited-use immunity letter executed by the parties, there are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 12/19/2016

By: _____
CHRISTOPHER BROWNE
ASSISTANT U.S. ATTORNEY

Date: 12/19/16

By: _____
VINCENT DUFFY, ESQ.
ATTORNEY FOR DEFENDANT

Date: 12/19/2016

By: _____
GITANO PIERRE BRYANT, JR.,
DEFENDANT